UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| IN RE APPLICATION OF FRASERS GROUP PLC FOR AN ORDER PURSUANT TO 28 U.S.C. § 1782 TO CONDUCT DISCOVERY FOR USE IN FOREIGN PROCEEDINGS | Civil Action No. <br><br> 23-22795 (SDW) (LDW) <br><br> **OPINION** |

**LEDA DUNN WETTRE, United States Magistrate Judge**

Before the Court is Frasers Group PLC's ("Frasers") emergency application pursuant to 28 U.S.C. § 1782 to obtain documents and deposition testimony from Penny Novick, an employee of Morgan Stanley, for use at a proceeding in the High Court of Justice, Business and Property Courts of England and Wales, Commercial Court. (ECF Nos. 1, 10). Although submitted *ex parte*, the Court directed Frasers to serve copies of this application on Ms. Novick and Morgan Stanley and ordered expedited briefing. (ECF No. 2). Ms. Novick and Morgan Stanley oppose the application. (ECF No. 7). The Court heard oral argument on the application on January 5, 2024. On January 8, 2024, the parties consented to the undersigned's jurisdiction to resolve this application. (ECF No. 21). Having considered the parties' written submissions and arguments, Frasers' § 1782 application is **DENIED**.

## I.   BACKGROUND

On May 25, 2021, Morgan Stanley & Co. International PLC ("MSIP"), a London subsidiary of Morgan Stanley, made a margin call of more than $900 million on Saxo Bank relating to Hugo Boss call options. (Hart Decl. ¶ 14, ECF No. 1-1). Saxo Bank paid a portion of the margin call and then, in turn, issued its own margin call to Frasers, the underlying holder of the Hugo Boss option contracts. (*Id.*). Frasers filed a civil claim in the High Court of Justice, Business and Property Courts of England and Wales, Commercial Court on June 28, 2021 (the "English

Proceeding"), alleging among other things that MSIP's decision to impose the margin call was arbitrary and capricious and asserting claims under English law for the torts of inducing breach of contract and causing loss by unlawful means. (*Id.* ¶¶ 3, 18; Re-Re-Amended Particulars of Claim, ECF No. 1-3).

Document discovery (referred to as "disclosure") in the English Proceeding occurred in February 2023. (Hart Decl. ¶ 31). Among the documents produced by MSIP were transcripts of three recorded telephone calls on May 25, 2021 between Penny Novick, the Global Co-Head of Prime Brokerage at Morgan Stanley in New York, and MSIP employees in London regarding Saxo Bank's position in Hugo Boss options. (*Id.* ¶¶ 25-27). Frasers alleges that Ms. Novick was a link in the decision-making chain between MSIP and Morgan Stanley and, on November 21, 2023, filed the instant application for leave to serve a subpoena on Ms. Novick seeking documents and deposition testimony regarding "the motives, decision-making, and decision-makers relating to [the margin calls] during the relevant period and her involvement (whether direct or indirect) in the decision(s) to impose and maintain them." (*Id.* ¶ 34).

The Court notes that this is Frasers' second application to take discovery from a Morgan Stanley employee in the United States for use in the English Proceeding. On September 20, 2023, Frasers filed a § 1782 application in the United States District Court for the Southern District of New York seeking leave to serve a subpoena for documents and the deposition of James Gorman, the CEO of Morgan Stanley. *Frasers Grp. PLC v. Gorman*, No. 23 Misc. 348 (PAE), 2023 WL 6938284 (S.D.N.Y. Oct. 19, 2023). In an Opinion and Order dated October 19, 2023, the Honorable Paul A. Engelmayer, U.S.D.J. denied the application, principally because (1) Frasers could obtain Mr. Gorman's documents from MSIP, a party to the English Proceeding, and (2) a

deposition of the CEO of Morgan Stanley, a "paradigmatic 'apex witness,'" would be unduly burdensome. *Id.* at *2-3. That decision is presently on appeal.

## II. DISCUSSION

Section 1782(a) provides that "[t]he district court of the district in which a person resides or is found may order him to give his testimony or statement or to produce a document or other thing for use in a proceeding in a foreign or international tribunal." Courts "evaluate discovery requests under section 1782 in light of the statute's twin aims of providing efficient means of assistance to participants in international litigation in our federal courts and encouraging foreign countries by example to provide similar means of assistance to our courts." *Euromepa S.A. v. R. Esmerian, Inc.*, 51 F.3d 1095, 1097 (2d Cir. 1995) (internal quotation omitted).

"Section 1782 imposes three fundamental requirements for a discovery subpoena: (1) the person from whom discovery is sought must reside in the district; (2) the discovery must be for use in proceedings before a foreign tribunal; and (3) the application can be made by either the foreign tribunal or by an interested party." *Kulzer v. Esschem, Inc.*, 390 F. App'x 88, 91 (3d Cir. 2010). However, "a district court is not required to grant a § 1782(a) discovery application simply because it has the authority to do so." *Intel Corp. v. Advanced Micro Devices, Inc.*, 542 U.S. 241, 264 (2004). After confirming that the statutory requirements are satisfied, the Court must determine whether to exercise its discretion to grant a request for judicial assistance pursuant to § 1782, guided by four factors set forth by the Supreme Court in *Intel*:

> 1. Whether the discovery sought is within the foreign tribunal's jurisdictional reach, and therefore accessible without seeking the aid of § 1782;
> 2. The nature of the foreign litigation; the character of the proceedings already underway; and the foreign country's receptivity to court assistance from the U.S.;
> 3. Whether the § 1782 request conceals "an attempt to circumvent foreign proof-gathering limits" or other policies of the foreign country; and
> 4. Whether the subpoena includes unduly intrusive or overly burdensome requests.

3

*Kulzer*, 390 F. App'x at 91 (citing *Intel*, 542 U.S. at 264-65).  These factors "are not to be applied mechanically," and the Court "should also take into account any other pertinent issues arising from the facts of the particular dispute."  *Kiobel v. Cravath, Swaine & Moore, LLP*, 895 F.3d 238, 245 (2d Cir. 2018).

There is no dispute that the statutory prerequisites for relief under § 1782 are met here.  Although she is employed by Morgan Stanley in New York, Ms. Novick resides in this District.[1]  Novick Decl. ¶ 3, ECF No. 7-2.  Frasers seeks documents and testimony from Ms. Novick for use at the upcoming trial in the English Proceeding.  Frasers, the Claimant in the English Proceeding, is an interested party that may make use of § 1782.  *In re Application for Discovery for Use in Foreign Proceeding Pursuant to 28 U.S.C. § 1782*, Civ. A. No. 17-4269-KM-JBC, 2019 WL 168828, at *5 (D.N.J. Jan. 10, 2019) (party to a foreign proceeding is an "interested party" within the meaning of § 1782).  Therefore, the Court proceeds to consider whether the *Intel* factors counsel in favor of Frasers' application.

---

[1] As the subpoena seeks Morgan Stanley business records and the deposition of a Morgan Stanley employee who works in New York, Ms. Novick and Morgan Stanley contend that this application should have been filed in the United States District Court for the Southern District of New York. Section 1782 requires that the subpoena recipient "resides or is found" in the District in which the application is brought.  Ms. Novick acknowledges that her home residence is in New Jersey.  She very well may also be "found" in the Southern District of New York as a result of her place of employment, but that does not diminish the validity of Frasers' choice of forum.  *See In re del Valle Ruiz*, 939 F.3d 520, 528 (2d Cir. 2019) (holding that "§ 1782's 'resides or is found' language extends to the limits of personal jurisdiction consistent with due process").  There is no suggestion that the Southern District of New York is more convenient for any party.  Moreover, the Court does not find Frasers' decision to bring the instant application in the District of New Jersey to be evidence of forum shopping.  As discussed at oral argument, in light of the Southern District of New York's practice of assigning miscellaneous matters to the Part I duty judge, there is no reason to believe that this application, if transferred, would be handled by Judge Engelmayer or that Frasers opted to proceed in this District to avoid a second ruling by Judge Engelmayer.  The Court accepts Frasers' explanation that the most expedient course of action was to file this application in a Court where it could be assured of jurisdiction over Ms. Novick.  The statute, by its terms, provides for at least two possible fora for this application, and, as such, the Court finds no basis for venue transfer or dismissal based on Frasers' choice of the District of New Jersey.

A. **First *Intel* Factor**

The first *Intel* factor looks to whether the subpoena recipient is a participant in the foreign proceeding such that the foreign court has jurisdiction to order production of the discovery sought in the United States. "[W]hen the person from whom discovery is sought is a participant in the foreign proceeding . . . the need for § 1782(a) aid generally is not as apparent as it ordinarily is when evidence is sought from a nonparticipant in the matter arising abroad. A foreign tribunal has jurisdiction over those appearing before it, and can itself order them to produce evidence." *Intel*, 542 U.S. at 264. Moreover, "when the real party from whom documents are sought . . . is involved in foreign proceedings, the first *Intel* factor counsels against granting a Section 1782 petition." *Kiobel*, 895 F.3d at 245. Although the subpoena is directed to Ms. Novick, it seeks Morgan Stanley business records in Ms. Novick's custodial file. Ms. Novick may not be a party to the English Proceeding, but MSIP is. MSIP agreed in the English Proceeding to search for relevant documents not only in its own files, but throughout the Morgan Stanley enterprise. Carty Decl. ¶ 7, ECF No. 7-3. Indeed, Frasers requested and received from MSIP documents from at least three Morgan Stanley custodians based in New York. *Id.* ¶ 10. MSIP further agreed that it would not raise jurisdictional objections to producing documents from U.S.-based employees of Morgan Stanley, *id.* ¶ 7, nor would Morgan Stanley object to producing any business records located in Ms. Novick's personal devices or files in New Jersey. *See* Oral Arg. Tr. at 30:20 – 31:1. Although she has not been designated as a document custodian in the English Proceeding to date, the High Court plainly could order MSIP to produce relevant documentary evidence from Ms. Novick – a point Frasers apparently concedes. *See* 2d Hart Decl. ¶ 20(d), ECF No. 10-1 (acknowledging that "it may be true that the English Court could seek MSIP's documents held by Ms. Novick in her business capacity for use in the English Proceeding"). *Cf. Frasers*, 2023 WL 6938284, at *2

5

(denying Frasers' prior § 1782 application in part because "[a]lthough Mr. Gorman is not a party in the case before the High Court, MSIP is a party, and the High Court undisputedly can seek records from Mr. Gorman in his business capacity as a 'document custodian,' thus permitting Frasers Group to obtain the requested documents from a party, MSIP, to the High Court proceeding" (citation omitted)). Thus, with respect to the document subpoena, the first *Intel* factor weighs against Frasers' application.

With respect to the deposition of Ms. Novick, however, the Court recognizes that the High Court cannot itself order such relief because depositions are not available under English procedure. *See* 2d Hart Decl. ¶ 18.

### B. Second *Intel* Factor

The second *Intel* factor considers "the nature of the foreign tribunal, the character of the proceedings underway abroad, and the receptivity of the foreign government or the court or agency abroad to U.S. federal-court judicial assistance." *Intel*, 542 U.S. at 264. "England is generally receptive to § 1782 discovery requests," *Frasers*, 2023 WL 6938284, at *3, and there is no dispute that the second *Intel* factor favors granting Frasers' application.

### C. Third *Intel* Factor

The third *Intel* factor asks "whether the § 1782(a) request conceals an attempt to circumvent foreign proof-gathering restrictions or other policies of a foreign country or the United States." *Intel*, 542 U.S. at 265. There is nothing in the record to suggest that Frasers is attempting with this application to circumvent general discovery rules of the English legal system. Moreover, Frasers is correct that it is not required to seek and exhaust efforts to obtain Ms. Novick's documents in the English Proceeding before seeking recourse in the United States pursuant to § 1782. *In re O'Keeffe*, 646 F. App'x 263, 268 (3d Cir. 2016). The Court nevertheless may inquire into the

6

applicant's decision to forego that option in favor of § 1782 relief, and "a perception that an applicant has side-stepped less-than-favorable discovery rules by resorting immediately to § 1782 can be a factor in a court's analysis." *In re Application for Discovery*, 2019 WL 168828, at *11 (quotation omitted). Thus, "a party's failure to invoke local discovery procedures remains significant, and may be considered." *Id.*

As the Court understands it, Frasers and MSIP agreed before the High Court on "a set of issues for disclosure, date ranges, 16 custodians for e-communications collection,[2] and search terms for such collection." Carty Decl. ¶ 7. The High Court ruled that these custodians "appeared to cover the likely important ground, absent clear evidence emerging from the primary round of disclosure that some critical individual had been left off." *See* Mr. Justice Andrew Baker's Dec. 1, 2023 Ruling 2 at ¶ 7, ECF No. 7-3; *see also* Dec. 1, 2023 Transcript of Proceedings before Mr. Justice Baker at 44:18-22, ECF No. 7-3 (quoting Mr. Justice Jacobs' ruling that the initial custodian list was sufficient because "I don't think I can anticipate that there is anybody else and I think the more that you get away from the decision-makers to discussions between people who are not involved in decision-making, the more remote the whole thing becomes").

Frasers received a document production from MSIP in February 2023. In Frasers' view, those documents revealed other MSIP and Morgan Stanley employees who were in some way involved in the margin call such that their files also should be searched. For example, Frasers requested that MSIP add Simon Smith, a senior employee in London, as a disclosure custodian. *See* 2d Hart Decl. ¶ 16. When MSIP objected, Frasers filed an application for such disclosure in the High Court on April 19, 2023, which ultimately was resolved consensually. *Id.* Of particular

---

[2] Three custodians subsequently were added, so in total "MSIP has reviewed documents from 19 custodians on topics relevant to the dispute." Carty Decl. ¶ 12.

7

relevance, on September 19, 2023 Frasers made a second application to the High Court, again seeking documents from additional custodians including Alan Thomas, the Co-Head of the Institutional Equities Division at Morgan Stanley in New York.  *See* Carty Decl. ¶ 13.  As it has done here regarding Ms. Novick, Frasers argued to the High Court that Alan Thomas is a senior New York-based Morgan Stanley employee allegedly involved with the London subsidiary's margin call and therefore likely to possess information relevant to its claims.  On December 1, 2023, the High Court denied Frasers' application, finding it significant that Frasers was in possession of "substantial evidence" relating to Mr. Thomas in February 2023 but inexplicably waited until September 2023, "quite close to trial, long after the primary disclosure has been given," to seek to add him as a custodian.  *See* Mr. Justice Andrew Baker's Dec. 1, 2023 Ruling 2 at ¶¶ 5, 8.  The High Court further found that the addition of Mr. Thomas as a document custodian "at this late stage" was not "necessary to do justice to this case at trial" as the Court could be satisfied that discovery "has been done reasonably and proportionately" without Mr. Thomas' documents.  *Id.* ¶ 8.

Frasers acknowledged at oral argument that it received documents relating to Ms. Novick in February 2023 such that it was on notice that she may have had some involvement with the margin call nine months prior to filing this application to serve a subpoena on her.  *See* Oral Arg. Tr. at 14:10-14.  Discovery is apparently ongoing in the English Proceeding, *see* 2d Hart Decl. ¶ 13,[3] and Frasers had multiple opportunities to do so, yet it has never sought to add Ms. Novick

---

[3] Indeed, on December 20, 2023, the High Court granted Frasers' unopposed application for production of certain Bloomberg messages between MSIP and Saxo Bank. (ECF No. 17). As the Court understands it, this Order does not add any new custodians to the existing pool; instead, MSIP agreed to search the documents of existing custodians for Bloomberg messages "dating between 14 April and 26 May 2021 (inclusive) regarding the Saxo Short Puts and Saxo Short Calls." *Id.*

8

as a custodian in the English Proceeding. Instead, it waited until trial became imminent to file an emergency application for discovery from Ms. Novick in the United States. Of course, Frasers filed the § 1782 application about one week prior to the High Court's December 1, 2023 denial of its application for additional custodians, so the decision to seek discovery from Ms. Novick in this Court technically did not circumvent that ruling. But Frasers has offered no compelling justification for never having applied to the High Court to add Ms. Novick as a custodian, despite its acknowledged ability to do so.[4] The Court is keenly aware that the High Court is actively supervising – and cabining – discovery in the English Proceeding. Granting the instant § 1782 application would directly conflict with not only the High Court's December 1, 2023 ruling with respect to Mr. Thomas, a senior New York-based Morgan Stanley employee who is substantially similarly situated to Ms. Novick, but also the High Court's prior determination that the initial pool of custodians agreed upon by the parties was sufficient absent "clear evidence" that a crucial custodian should be added. Under the circumstances, the Court is left with the distinct impression that Frasers bypassed the High Court in favor of a § 1782 application to a stranger court to the underlying litigation, unfamiliar with the intricacies of English litigation, in an attempt to expand the scope of disclosure beyond that allowed by the High Court. *See In re Mun*, No. 22-mc-243-MN-JLH, 2023 WL 7074016, at *4-5 (D. Del. Oct. 26, 2023) (finding that third *Intel* factor weighs

---

[4] At oral argument, Frasers cited to *Federal Republic of Nigeria v. VR Advisory Services, Ltd.*, 27 F.4th 136 (2d Cir. 2022) for the proposition that it is free to pick and choose among various domestic and foreign discovery devices at its discretion such that filing a § 1782 application in lieu of seeking discovery from Ms. Novick in the High Court does not amount to circumvention. This is a generous interpretation of the Second Circuit's holding that a foreign sovereign need not seek discovery for use in a foreign criminal proceeding via a Mutual Legal Assistance Treaty prior to filing a § 1782 application. *Id.* at 157. Regardless, it suffices to say that there is no exhaustion requirement in § 1782, but "'the § 1782 applicant's conduct in the foreign forum is not irrelevant'" to the Court's consideration of discretionary factors. *In re Application for Discovery*, 2019 WL 168828, at *11 (quoting *In re Application of Gilead Pharmasset LLC*, Civ. A. No. 14-mc-243 (GMS), 2015 WL 1903957, at *4 (D. Del. Apr. 14, 2015)).

"strongly" against discovery where "[t]o the extent that Petitioners' Application requests documents also in the possession or control of the Company that are not already required to be produced in Bermuda, those requests have already been effectively rejected by the Bermuda Court by operation of the Directions Order, which limited the scope of discovery available from the Company"). Accordingly, the third *Intel* factor weighs against granting the requested relief.[5]

### D.  Fourth *Intel* Factor

The fourth *Intel* factor considers whether the subpoena is "unduly intrusive or burdensome." *Intel*, 542 U.S. at 245. "Section 1782 expressly incorporates the Federal Rules of Civil Procedure and the fourth factor aligns with Rules 26 and 45. Thus, assessment of the fourth factor is virtually identical to the familiar 'overly burdensome' analysis that is integral to the Federal Rules." *In re Ex Parte Glob. Energy Horizons Corp.*, 647 F. App'x 83, 85-86 (3d Cir. 2016). Accordingly, the discovery requested must be "relevant to any party's claim or defense and proportional to the needs of the case, considering [among other things] . . . whether the burden

---

[5] The Court's analysis with respect to that part of the § 1782 application seeking Ms. Novick's deposition is somewhat different. Although depositions are not available in the English Proceeding, allowing Frasers to depose Ms. Novick and potentially use her testimony at trial is at least analogous to adding a new disclosure custodian, something the High Court has not permitted. Moreover, this Court shares the High Court's concerns about Frasers' delay in seeking evidence, including testimony from Ms. Novick. Although it does not neatly fit within the *Intel* factors, the timeliness of a § 1782 application is relevant to the Court's consideration of whether to grant relief. *In re Bayer AG*, 146 F.3d 188, 196 (3d Cir. 1998). The application to subpoena Ms. Novick comes two months after Frasers sought to add Alan Thomas as a custodian, which application the High Court denied, at least in part, as untimely. Frasers has not offered a satisfactory explanation for its decision to wait until the eve of trial to bring an emergent § 1782 application when it has been on notice of Ms. Novick's alleged involvement in the margin call since February 2023 and could have sought relief from this Court on a non-emergent basis much earlier. *See Aventis Pharma v. Wyeth*, No. M-19-70, 2009 WL 3754191, at *1 (S.D.N.Y. Nov. 9, 2009) (denying § 1782 application because "this Court would not be providing 'efficient means of assistance' to the litigants or the French Courts by allowing Aventis to rush to a U.S. Court on the eve of an appeal in hopes of obtaining discovery it could have requested in this same Court starting over five years ago").

10

or expense of the proposed discovery outweighs its likely benefit." Fed. R. Civ. P. 26(b)(1). The Court assumes without deciding for purposes of this application that Ms. Novick may possess some relevant documents and information regarding the margin call at issue. But, having reviewed the categories of information sought, the Court finds that the requested discovery would be disproportionate to the needs of the case.

Frasers' proposed subpoena to Ms. Novick seeks six categories of documents. *See* Proposed Subpoena, ECF No. 1-2. Request Nos. 2-6 relate to fairly generic topics such as "Mike Ashley," Morgan Stanley's participation in the imposition and maintenance of the margin call, if any, and "risk management by the prime brokerage business." *Id.* Frasers has given the Court no reason to believe that Ms. Novick would possess documents not otherwise captured in disclosure from the 19 other MSIP and Morgan Stanley custodians in the English Proceeding on these subjects. Only Request No. 1 specifically relates to Ms. Novick, seeking "[a]ll Documents and Communications related to the subject matter of your calls on May 25, 2021, with members of the London Prime Brokerage business, including, but not limited to, any communications with Greg Basso, Ian MacLeod, Mark Bortnik, Anthony Greco, and Alan Thomas." *Id.* However, Frasers acknowledged at oral argument that some of the people who participated in the May 25, 2021 telephone calls with Ms. Novick were designated as document custodians in the English Proceeding such that it already should have obtained documents on this topic, including the transcripts of the recorded calls on May 25, 2021. *See* Oral Arg. Tr. 61:24 – 62:6. Considering the subpoena as a whole, the Court finds the possibility that searching Ms. Novick's files could reveal additional relevant documents not previously produced is minimal and outweighed by the burden and expense of such an exercise. *See Bayer AG v. Betachem, Inc.*, 173 F.3d 188, 191 (3d

11

Cir. 1999) (affirming denial of § 1782 request for discovery cumulative of documents applicant already possessed).

While Frasers has not specified precise topics for Ms. Novick's proposed deposition, the Court uses the document requests as a guide, and again, the only subject on which Ms. Novick can definitively be said to have personal knowledge is the May 25, 2021 telephone calls. Those calls were recorded, and Frasers already knows exactly what transpired and what Ms. Novick said, verbatim. The Court would not impose the burden of a deposition on a non-party when her testimony could add, at best, incremental information to the transcripts already in Frasers' possession. Accordingly, the fourth *Intel* factor counsels against granting § 1782 relief.

Having carefully considered the *Intel* and other factors, the balance tips decidedly towards denial of Frasers' application.

### III. CONCLUSION

For the foregoing reasons, Frasers' application pursuant to 28 U.S.C. § 1782 to serve a subpoena on Penny Novick (ECF No. 1) is **DENIED**.

Dated:  January 12, 2024

                                            *s/ Leda Dunn Wettre*
                                            Hon. Leda Dunn Wettre
                                            United States Magistrate Judge